IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 26-cv-00312-PAB-NRN

CARLOS MARTINEZ CRUZ,

   Petitioner,

v.

MARKWAYNE MULLIN,[1] Secretary, U.S. Department of Homeland Security,
TODD BLANCHE,[2] Acting U.S. Attorney General,
GEORGE VALDEZ,[3] Field Office Director, Denver Field Office, Immigration and
Customs Enforcement, and
JUAN BALTAZAR, Warden of Denver Contract Detention Facility,

   Respondents.

---

**ORDER**

---

This matter comes before the Court on petitioner Carlos Martinez Cruz's Motion

to Reconsider [Docket No. 31]. Respondents filed a response, Docket No. 33, and

petitioner filed a reply. Docket No. 34.

## I. BACKGROUND[4]

Petitioner is a citizen of Mexico. Docket No. 14-1 at 3, ¶ 4. He resides near

Tallahassee, Florida with his United States citizen wife and four children. Docket No. 1

at 5, ¶ 23. Petitioner claims he has been continuously living in the United States for

---

   [1] Pursuant to Federal Rule of Civil Procedure 25(d), Markwayne Mullin is
automatically substituted as a party in this action.
   [2] Pursuant to Federal Rule of Civil Procedure 25(d), Todd Blanche is
automatically substituted as a party in this action.
   [3] Pursuant to Federal Rule of Civil Procedure 25(d), George Valdez is
automatically substituted as a party in this action.
   [4] The following facts are undisputed unless otherwise noted.

almost twenty years.  *Id*., ¶ 22.  Petitioner was never inspected and admitted or paroled into the United States.  Docket No. 14-1 at 3, ¶ 10.  On November 12, 2025, Immigration and Customs Enforcement ("ICE") officials encountered petitioner in Tallahassee, Florida and determined that he did not possess documentation authorizing his entry into or presence in the United States.  *Id.* at 4, ¶ 13.  Upon this determination, ICE officials arrested and detained petitioner without a warrant.  *Id.*; Docket No. 1 at 5-6, ¶ 24.  Petitioner was initially detained in Florida, but was transferred to the Denver Contract Detention Facility on December 10, 2025.  Docket No. 14-1 at 4, ¶ 15.  On December 12, 2025, ICE issued a Notice to Appear ("NTA"), initiating removal proceedings under 8 U.S.C. § 1229a.  *Id.*, ¶ 16.  The Notice to Appear charged petitioner with being inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) and 8 U.S.C. § 1182(a)(7)(A)(i)(I).  *Id.*

On January 26, 2026, petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  Docket No. 1.  Among other things, petitioner argued that respondents improperly detained him pursuant to 8 U.S.C. § 1225(b)(2), thus subjecting him to mandatory detention.  *Id.* at 11-14, ¶¶ 41-47.  Petitioner asserted that his detention should be governed by 8 U.S.C. § 1226(a).  *Id.*  On March 17, 2026, the case was reassigned.  Docket No. 18.  On March 18, 2026, the Court ruled on the habeas petition, finding that petitioner was detained pursuant to § 1226(a) and was thus entitled to a bond hearing.  Docket No. 19 at 3-4.  Accordingly, the Court ordered that "respondents shall provide petitioner with a bond hearing under 8 U.S.C. § 1226(a) within seven days of the date of this Court's order."  *Id.* at 5.  On March 26, 2026, respondents obtained a one-day unopposed extension to hold the bond hearing no later

2

than March 26, 2026.  Docket No. 22.  On March 31, 2026, the parties filed a joint status report indicating that a bond hearing was held on March 26, 2026, wherein bond was denied.  Docket No. 23.

Petitioner asserts, and respondents do not dispute, that at the bond hearing petitioner submitted evidence including a copy of his 2003 marriage certificate to his U.S. citizen wife, the birth certificates of his four U.S. citizen children, 25 letters of support from his family and neighbors, tax returns for 2015-2024, proof of his property ownership, a psychological evaluation, and business documents related to a construction company which he jointly owns with his wife.  Docket No. 24 at 2.  At the bond hearing, the Department of Homeland Security ("DHS") conceded that petitioner is not a danger to society, but argued that his several traffic citations for driving without a license indicate a pattern of disregarding the law, thus suggesting he is a flight risk.  *Id.* The immigration judge placed petitioner under oath and questioned him about his driving citations, his unauthorized employment, and his failure to legalize his status in the United States.  *Id.*  Petitioner explained that he drove and worked without authorization because he was unable to obtain documentation permitting him to do so. *Id.* at 2-3.  Petitioner's attorney attempted to argue that petitioner met the factors in *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)—a Board of Immigration Appeals ("BIA") case enumerating the factors which should be considered by Immigration Judges when determining bond—but was cut off from doing so.  *Id.* at 3.  The immigration judge issued a written decision stating in full that "[t]he Court has conducted an individualized bond hearing.  After considering the totality of the circumstances and all relevant factors, the Court finds that the respondent has not met his burden to establish that he

3

not [sic] a significant flight risk such that release from custody is warranted. Accordingly, the Court denies the respondent's request for a change in custody status." Docket No. 24-2 at 2.

On March 31, 2026, the same day that the parties submitted the status report, petitioner filed a motion to enforce, claiming that the bond hearing was not constitutionally compliant. Docket No. 24. On April 8, 2026, respondents filed a response to the motion to enforce. Docket No. 28. On April 14, 2026, petitioner filed a reply. Docket No. 29. On April 15, 2026, the Court denied the motion to enforce, finding that, under 8 U.S.C. § 1226(e), it lacked jurisdiction to set aside the immigration judge's denial of bond. Docket No. 30 at 5. On April 24, 2026, petitioner filed a motion to reconsider. Docket No. 31. On May 15, 2026, respondents filed a response. Docket No. 33. On May 20, 2026, petitioner filed a reply. Docket No. 34.

## II. ANALYSIS

Given that petitioner was denied release on bond, the Court finds it appropriate to address the remaining claims in his habeas petition. In his habeas petition, petitioner argued that he is detained under 8 U.S.C. § 1226(a), and that immediate release is the proper remedy for respondents improperly detaining him under 8 U.S.C. § 1225(b)(2). Docket No. 1 at 11-14, ¶¶ 41-47. Petitioner stated that he was arrested without a warrant. *Id.* at 5-6, ¶ 24.

The Court has determined that petitioner is detained pursuant to § 1226(a), *see* Docket No. 19 at 3-5, which provides that, "*[o]n a warrant issued by the Attorney General*, an alien may be arrested and detained pending a decision on whether the

4

alien is to be removed from the United States."[5]  8 U.S.C. § 1226(a) (emphasis added).

In their responses to the habeas petition, the motion to enforce, and the motion to

reconsider, *see generally* Docket Nos. 14, 28, 33, respondents do not contest

petitioner's assertion that he was arrested by immigration officials without a warrant.

*See* Docket No. 1 at 5-6, ¶ 24.  In fact, petitioner could not have been detained through

a valid warrant.  Federal Regulations state that a noncitizen "may be arrested and taken

into custody under the authority of Form I-200, Warrant of Arrest" only at "the time of

issuance of the notice to appear, or any time thereafter and up to the time removal

proceedings are completed."  8 C.F.R. § 236.1(b)(1).  Respondents concede that

petitioner was not issued a Notice to Appear until December 12, 2025—one month after

petitioner was arrested.  Docket No. 14-1 at 4, ¶¶ 13-16.  Respondents do not dispute

that petitioner was arrested without a warrant.  Moreover, if any such warrant did exist, it

would not be valid under 8 C.F.R. § 236.1(b)(1).

There are exceptions to § 1226(a)'s warrant requirement.  *Jennings v.
Rodriguez*, 583 U.S. 281, 303 (2018) ("Section 1226(a) creates a default rule for those

aliens by permitting – but not requiring – the Attorney General to issue warrants for their

arrest and detention pending removal proceedings.").  Pursuant to § 1357(a)(2),

immigration officials may arrest a noncitizen without a warrant:

> to arrest any alien who in his presence or view is entering or attempting to enter
> the United States in violation of any law or regulation made in pursuance of law
> regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest
> any alien in the United States, if he has reason to believe that the alien so
> arrested is in the United States in violation of any such law or regulation and is
> likely to escape before a warrant can be obtained for his arrest, but the alien

---

[5] The type of warrant issued by immigration officers is known as Form I-200.
*Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1216 (D. Colo. 2025) (citing 8 C.F.R.
§§ 236.1, 1236.1).

arrested shall be taken without unnecessary delay for examination before an
officer of the Service having authority to examine aliens as to their right to enter
or remain in the United States.

8 U.S.C. § 1357(a)(2).  Under § 1357(a)(5), an immigration officer may also make a
warrantless arrest:

(A) for any offense against the United States, if the offense is committed in the
officer's or employee's presence, or

(B) for any felony cognizable under the laws of the United States, if the officer or
employee has reasonable grounds to believe that the person to be arrested has
committed or is committing such a felony,

if the officer or employee is performing duties relating to the enforcement of the
immigration laws at the time of the arrest and if there is a likelihood of the person
escaping before a warrant can be obtained for his arrest.

8 U.S.C. § 1357(a)(5).  "Courts have recognized that these warrantless-arrest
authorities are strictly limited, particularly in the interior-arrest context."  *Morelos
Valdovinos v. Noem*, 2026 WL 948285, at *5 (D.N.M. Apr. 8, 2026) (collecting cases).

Respondents have failed to provide any argument or set forth any evidence
indicating that petitioner's warrantless arrest was proper under § 1357.  *See generally*
Docket Nos. 14, 28, 33.  There is no indication that petitioner committed an offense in
the presence of immigration officials.  *See* 8 U.S.C. § 1357(a)(5).  Respondents have
failed to show that they had reason to believe that, at the time of petitioner's arrest,
petitioner was likely to escape before a warrant could be obtained.  *See* 8 U.S.C.
§ 1357(a)(2).  To the contrary, respondents state why petitioner was arrested.  Through
the declaration of an ICE deportation officer, respondents assert that petitioner was
arrested after ICE officials determined that he did not possess documentation
authorizing his entry into or presence in the United States.  Docket No. 14-1 at 4, ¶ 13.
But a "lack of lawful status" is insufficient to justify a warrantless arrest under § 1357.

6

*Ramirez Ovando*, 810 F. Supp. 3d at 1231 (collecting cases).  Accordingly, the Court finds that respondents lacked statutory authority to arrest petitioner.  *See id.* (finding that plaintiffs had demonstrated a likelihood of success on the merits of their claim that defendants had violated § 1357(a)(2) where the immigration officers took "plaintiffs into custody upon confirming their identities and their lack of lawful status" and the "officers asked no questions – until after their arrests – bearing on flight risk, including about plaintiffs' families, employment, or other community ties"); *Morelos Valdovinos*, 2026 WL 948285, at *6 (finding that respondents lacked authority for petitioner's arrest where "[n]othing in the record suggests that either statutory condition – reasonable belief of a violation or likelihood of escape – was met" and "the record contains no facts that would satisfy § 1357(a)(2) or (a)(5)'s narrow prerequisites for a warrantless arrest"); *Matovu v. Mullin*, 2026 WL 1387476, at *3 (W.D. Okla. May 18, 2026) (finding that respondents' warrantless arrest was unlawful where "Respondents introduced no evidence and, as such, failed to establish that they had reason to believe Petitioner was likely to escape before a warrant could be obtained for his arrest") (alteration, internal quotation, and citation omitted).

Where respondents have failed to obtain a warrant for a noncitizen detained under § 1226(a) and lacked statutory authority for a warrantless arrest, courts have found the appropriate remedy is to order the non-citizen's release.  *See, e.g.*, *Morelos Valdovinos*, 2026 WL 948285, at *7 (ordering petitioner's released based on "a growing body of decisions holding that when DHS detains a noncitizen under § 1226(a) without a warrant and without satisfying § 1357(a)(2), the detention is unlawful from the outset and immediate release is required") (collecting cases); *Matovu*, 2026 WL 1387476, at

7

*3; *Kunner v. Grant,* 2026 WL 1623016, at *4 (W.D. Okla. Apr. 22, 2026), *report and recommendation adopted sub nom.*, 2026 WL 1452463 (W.D. Okla. May 22, 2026). "[W]hen DHS cannot meet the statute's requirements for a warrantless arrest, continued detention is unlawful and release is the only permissible remedy*." Morelos Valdovinos* 2026 WL 948285, at *7.  Accordingly, the Court will order petitioner's release.[6]

The Court further notes that, if respondents obtain a warrant and re-detain petitioner, petitioner's detention is subject to § 1226(a).  *See de Jesus Aguilar v. Eng.*, No. 2025 WL 3280219, at *9 (N.D. Ind. Nov. 25, 2025) ("Perhaps the government could go secure a warrant and rearrest him at or after his release, but to be clear the government must then proceed under § 1226(a).").  Thus, petitioner would be entitled to a new bond hearing.[7]  *See id.*; *Francisco T. v. Bondi*, 2025 WL 3236513, at *3 (D. Minn. Nov. 19, 2025) (holding that a petitioner previously released after a bond hearing would be entitled to a new bond hearing if re-detained pursuant to § 1226(a)); *Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) (ordering a "renewed bond hearing" under § 1226 when petitioner had previously received a bond hearing during a prior detention under § 1226).

## III.  CONCLUSION

Therefore, it is

---

[6] Because the Court will order petitioner's release, it will not reconsider its holding that it lacked jurisdiction to review the immigration judge's bond determination.

[7] If this bond hearing occurs, respondents would bear the burden of proof.  "[T]he weight of authority in this District is clear: it is the Government's burden to justify a noncitizen's continued detention at a bond hearing."  *See Abanil v. Baltazar*, No. 25-cv-4029-WJM-STV, 2026 WL 100587, at *8 (D. Colo. Jan. 14, 2026) (internal quotation, alteration, and citation omitted) (collecting cases); *Arredondo v. Baltazar*, No. 25-cv-03040-RBJ, 2025 WL 4083607, at *4 (D. Colo. Oct. 31, 2025) ("the Court sides with the majority of courts in this District that have found that it is more appropriate for the government to bear the burden of proof in this context").

**ORDERED** that petitioner Carlos Martinez Cruz's Motion to Reconsider [Docket No. 31] is **GRANTED**.  It is further

**ORDERED** that respondents shall release petitioner Carlos Martinez Cruz from custody within **48 hours**.  It is further

**ORDERED** that the parties shall file a report regarding the status of petitioner's release within **four days** of this order.

DATED June 18, 2026.

BY THE COURT:

s/ Philip A. Brimmer_____
PHILIP A. BRIMMER
United States District Judge